MAX FISCHER (Bar No. 226003)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel.: (213) 612-2500
Fax: (213) 612-2501
max.fischer@morganlewis.com

PAUL D. CLEMENT (*pro hac vice*)          ERIC MECKLEY (Bar No. 168181)
C. HARKER RHODES IV (*pro hac vice*)      MORGAN, LEWIS & BOCKIUS LLP
MITCHELL K. PALLAKI (*pro hac vice*)      One Market
CLEMENT & MURPHY, PLLC                    Spear Street Tower
706 Duke Street                          San Francisco, CA 94105-1596
Alexandria, VA 22314                     Tel.: (415) 442-1000
Tel.: (202) 742-8900                     Fax: (415) 442-1001
paul.clement@clementmurphy.com           eric.meckley@morganlewis.com

Attorneys for Petitioner X Corp.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| X CORP. | Case No. 2:25-cv-02766-RGK-KES |
| *Petitioner,* | |
| v. | **PETITIONER X CORP.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION** |
| KYLE BAHR; KEVYN BELE-BINDA; YOMNA ELSAYED; SHAZIA HAQ; FARAH MYNAF; FRANK RODRIGUEZ; OLEG TROFIMOV, | Judge: Honorable R. Gary Klausner Courtroom: 850 Date: June 2, 2025 Time: 9:00 a.m. |
| *Respondents.* | |

X'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, on June 2, 2025, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 850 of the above-entitled Court, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California, Petitioner X Corp. ("X") will and hereby does move, this Court pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, for an Order compelling Respondents Kyle Bahr, Kevyn Bele-Binda, Yomna Elsayed, Shazia Haq, Farah Mynaf, Frank Rodriguez, and Oleg Trofimov (collectively, "Respondents") to arbitration in accordance with the parties' Dispute Resolution Agreement ("DRA") (Pet.Ex.1, Dkt.1-1).[*]  X's motion is based on this Notice, the accompanying Memorandum of Points and Authorities, X's Petition, documents incorporated by reference or subject to judicial notice, and any other materials presented at the time of the hearing.

## STATEMENT OF RELIEF SOUGHT

X seeks an order under Section 4 of the FAA compelling Respondents Kyle Bahr, Kevyn Bele-Binda, Yomna Elsayed, Shazia Haq, Farah Mynaf, Frank

---

[*] As noted in the Petition, Respondents signed either a November 2018 or June 2020 version of the DRA based on when they started working at Twitter.  Pet.1 n.1, Dkt.1; Declaration of Adam Mehes at ¶4, Ex.A.  As the content of both versions is the same, this Notice and Motion, like the Petition, refers to both versions collectively as the DRA.

Rodriguez, and Oleg Trofimov (collectively, "Respondents") to pursue their respective claims individually in arbitration against X before Judicial Arbitration and Mediation Services ("JAMS") and to pay their respective pro rata shares of the arbitration fees as required by Section 6 of the DRA unless and until the individual arbitrator presiding over the arbitration orders a different apportionment.

## **LOCAL RULE 7-3 PRE-FILING CONFERENCE**

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 23, 2025. The parties were unable to reach a resolution that eliminates the necessity of a hearing on X's Motion.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT (*pro hac vice*)
C. HARKER RHODES IV (*pro hac vice*)
MITCHELL K. PALLAKI (*pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com
mitchell.pallaki@clementmurphy.com

MAX FISCHER (Bar No. 226003)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel.: (213) 612-2500
Fax: (213) 612-2501
max.fischer@morganlewis.com

ERIC MECKLEY (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
eric.meckley@morganlewis.com

*Attorneys for Petitioner X Corp.*

May 1, 2025

---

X'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION - 3

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.      INTRODUCTION .................................................................... 1

II.     BACKGROUND ...................................................................... 3

    A.    The Parties Entered Into an Enforceable Arbitration Agreement .............................................................. 3

    B.    Respondents Wrongfully Refuse to Pay Their Shares of the Arbitration Fees ............................................................. 6

III.    ARGUMENT......................................................................... 7

    A.    The DRA Requires Respondents To Pay Their Shares of the Arbitration Fees .............................................................. 7

    B.    None of Respondents' Likely Counterarguments Is Persuasive .................................................................11

        1.    Neither JAMS Nor Its Minimum Standards Can Excuse Respondents From Paying Their Shares of the Arbitration Fees..........................................................11

        2.    California Law Does Not Excuse Respondents From Paying Their Shares of the Arbitration Fees .......................... 15

        3.    California Law Cannot Penalize X For Insisting on Its Contractual Rights Under the DRA ......................... 18

IV.     CONCLUSION........................................................................ 20

---

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agerkop v. Sisyphian LLC*,
  2021 WL 1940456 (C.D. Cal. Apr. 13, 2021)....................................................20

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)...........................................................................................10

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  6 P.3d 669 (Cal. 2000) ..................................................................................2, 16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...........................................................................................17

*Belyea v. GreenSky, Inc.*,
  637 F.Supp.3d 745 (N.D. Cal. 2022) ................................................................19

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
  238 F.3d 549 (4th Cir. 2001)..........................................................................9, 17

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005)...........................................................................20

*Burgos v. Citibank, N.A.*,
  745 F.Supp.3d 959 (N.D. Cal. 2024) ................................................................20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)............................................................................7

*Costa v. Melikov*,
  2022 WL 18228248 (C.D. Cal. Oct. 21, 2022)..................................................20

*Davis v. Movement Mortg., LLC*,
  2024 WL 5294290 (E.D. Cal. Dec. 10, 2024) ...................................................19

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)............................................................................................8

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018)........................................................................................1, 7

*Essex v. Children's Place, Inc.*,
    2017 WL 6000347 (D.N.J. Dec. 4, 2017) ......................................................... 14

*Frazier v. X Corp.*,
    739 F.Supp.3d 219 (S.D.N.Y. 2024) ................................................................ 15

*Hernandez v. Sohnen Enters., Inc.*,
    321 Cal.Rptr.3d 283 (Cal. Ct. App. 2024) ................................................ 16, 19

*Little v. Auto Stiegler, Inc.*,
    63 P.3d 979 (Cal. 2003) .................................................................................... 17

*Ma v. Twitter, Inc.*,
    2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ...................................................... 15

*Martinez v. Refinitiv, Ltd.*,
    2024 WL 5424373 (C.D. Cal. Nov. 14, 2024) ............................................ 19, 20

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .......................................................................... 14

*Mosley v. Wells Fargo & Co.*,
    2024 WL 4804972 (N.D. Cal. Nov. 14, 2024) ................................................. 19

*Musnick v. King Motor Co. of Fort Lauderdale*,
    325 F.3d 1255 (11th Cir. 2003) .......................................................................... 8

*Nyerges v. Pac. Sunwear of Cal., LLC*,
    2022 WL 20717551 (C.D. Cal. July 6, 2022) ................................................... 20

*Payne v. Savannah Coll. of Art & Design, Inc.*,
    81 F.4th 1187 (11th Cir. 2023) ........................................................................... 9

*Postmates Inc. v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. Jan. 19, 2021) ..................................................... 20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) .......................................................................................... 10

*Rosa v. X Corp.*,
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) ...................................................... 15

TABLE OF AUTHORITIES - iii

*Tillman v. Tillman*,
    825 F.3d 1069 (9th Cir. 2016)............................................................... 11

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)...................................................................2, 17, 19

*Young v. Refined Techs., Inc.*,
    2022 WL 3012536 (C.D. Cal. June 17, 2022) ................................... 14

**Statutes**

9 U.S.C. §2 ...........................................................................................8, 16

9 U.S.C. §4 ....................................................................................1, 7, 11

Cal. Civ. Proc. Code §1281.97................................................3, 18, 19

Cal. Civ. Proc. Code §1281.98................................................3, 18, 19

Cal. Civ. Proc. Code §1281.99................................................3, 18, 19

Cal. Civ. Proc. Code §1284.2 ..........................................................6, 9

**Other Authorities**

Black's Law Dictionary (12th ed. 2024)...........................................9

JAMS Employment Rule 31 .................................................................6, 10

JAMS Policy on Employment Arbitration Minimum Standards of
    Procedural Fairness ...................................................................12, 13

Oxford English Dictionary (2d ed. 1989) .........................................9

Webster's New International Dictionary (2d ed. 1955) .........................10

Williston on Contracts (4th ed. 2024)................................................14

## AMENDED MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Federal Arbitration Act ("FAA") requires courts to "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). That principle controls here. When Respondents Kyle Bahr, Kevyn Bele-Binda, Yomna Elsayed, Shazia Haq, Farah Mynaf, Frank Rodriguez, and Oleg Trofimov (collectively, "Respondents") began working for Twitter, Inc. ("Twitter"), X Corp.'s ("X") predecessor, they each entered into an arbitration agreement, known as the Dispute Resolution Agreement ("DRA"), which explicitly provides that all arbitration fees "will be apportioned between the parties" unless the law requires otherwise. DRA §6. Respondents have sought arbitration under that agreement—but they refuse to pay their individual shares of the arbitration fees, instead asserting that X must pay the entire amount after the first $400. That position cannot be squared with the DRA's plain terms, making Respondents in breach of the agreement. Because Judicial Arbitration and Mediation Services ("JAMS") will not proceed with the arbitration unless its fees are paid, their breach is preventing the agreed-to arbitration from proceeding. X is thus "aggrieved by" each Respondent's "failure, neglect, [and] refusal … to arbitrate under [the parties'] written agreement for arbitration," and is entitled to "an order directing that [the] arbitration proceed in the manner provided for" in the DRA. 9 U.S.C. §4. In particular, X is entitled to an order directing Respondents each to arbitrate their respective claims and pay their

individual shares of the arbitration fees as the DRA requires.

None of Respondents' likely arguments for evading their obligations under the DRA is persuasive.  First, they cannot avoid their individual fee obligations by pointing to JAMS's position that its Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards") requires X to pay all arbitration fees after the first $400.  The DRA does not authorize JAMS (rather than the individual arbitrator overseeing the arbitration) to resolve fee disputes, and does not incorporate the Minimum Standards in its fee-sharing provision or anywhere else. Neither JAMS's views nor the Minimum Standards can displace the express contractual provisions reflecting the bargain the parties actually struck as to fees. But even if the DRA did somehow incorporate the Minimum Standards, they would not require X to pay the arbitration fees for both parties, because the DRA is an opt-out agreement, not a mandatory condition of employment.

Respondents also cannot escape their obligations by pointing to California law.  The DRA is explicitly governed by the FAA, making California's rules about who pays arbitration fees beside the point.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000).  Even if California law were to apply, it does not require employers to cover all arbitration fees in cases where (as here) arbitration is not a condition of employment.  And even if the DRA were mandatory, California's arbitration-specific rule requiring employers to cover arbitration fees is a paradigm of the kind of arbitration-specific rules that are clearly preempted by the FAA.  *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). California law accordingly provides no basis for departing from the DRA's clear

command that arbitration fees "will be apportioned between the parties" unless the governing law (the FAA) requires otherwise.  DRA §6.

Finally, Respondents cannot threaten X with penalties under the California Arbitration Act ("CAA") for holding them to their obligations under the DRA.  The DRA is governed by the FAA, not California law, so these CAA penalties are inapplicable.  And the CAA provisions penalizing employers who fail to pay arbitration fees that they owe, *see* Cal. Civ. Proc. Code §§1281.97-.99, are irrelevant in any event because X *has* paid all the fees it owes under the DRA; it is *Respondents* who are refusing to honor the parties' bargain and pay fees that *Respondents* owe.  On top of that, these CAA provisions are arbitration-specific rules that are preempted by the FAA, and so cannot be used to punish X for insisting on its contractual rights under the DRA.

In short, X is entitled to have its arbitration agreements with Respondents enforced as written.  This Court should grant the petition, compel Respondents to pursue their respective claims individually in arbitration according to the terms of the DRA, and order Respondents to pay their half of the arbitration fees unless and until their individual arbitrator orders a different allocation.

## II.  BACKGROUND

### A. The Parties Entered Into an Enforceable Arbitration Agreement

Respondents were hired by Twitter between November 2019 and December 2021 in various roles involving software engineering, user research and support, product management, and marketing.  *See* Declaration of Adam Mehes ("Decl.") ¶3, Ex.A.  When Respondents joined the company, Twitter sent each of them its

standard dispute resolution agreement, *see* Pet.1 n.1, Dkt.1; Decl.¶4—the DRA—which governs the resolution of "any dispute arising out of or related to [their] employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies … or termination of employment, and survives after the employment relationship terminates." DRA §1. This DRA was offered to every employee who worked at Twitter. Decl.¶5.

As the DRA explains, Respondents had the right to opt out of the DRA by sending an opt-out form to Twitter's human resources department. DRA §8. In fact, the DRA emphatically states in three separate locations that employees could opt out of the arbitration agreement, ensuring that employees understood that arbitration was not a mandatory condition of their employment. The DRA begins by stating (in bold font) that an employee "**can choose to opt out of this Agreement**" and has "**30 days to opt out.**" DRA at 1. The DRA then later explains (again in bold font) that "**[a]rbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**" DRA §8. Finally, immediately above the employee signature line, the DRA states (again in bold font) that "**By signing below, I … confirm I am aware of my right to opt out per the terms of this Agreement**." DRA at 3.

Many former Twitter employees followed the procedure to opt out of the DRA. Decl.¶7. Respondents, however, did not opt out. Decl.¶8. They are thus each bound by the DRA's terms.

The DRA is "governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. and

evidences a transaction involving commerce." DRA §1. "If the FAA is found not to apply," the DRA "is enforceable under the laws of the state" where the employee is employed upon entering into the agreement. *Id.* Under the DRA, "all covered disputes" must be resolved "only by an arbitrator through final and binding arbitration and not by way of court or jury trial." DRA §1. In particular, it provides that the parties will "bring any claim in arbitration before [JAMS], pursuant to the then-current JAMS Rules," defined to mean "the then-current JAMS Employment Arbitration Rules and Procedures." DRA §§3, 5. The DRA does not incorporate or refer to any of JAMS's other rules or policies, including the Minimum Standards. Rather, the DRA itself is "the full and complete agreement relating to the formal resolution of covered disputes." DRA §10.

The DRA also expressly allocates responsibility for paying arbitration fees. Section 6 of the DRA, entitled "Paying For The Arbitration," provides:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. *If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.*

DRA §6 (emphasis added). So under the plain terms of DRA, X must pay all the arbitration fees only "where required by law"; otherwise, "[i]f under applicable law

[X] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." *Id.* The DRA also incorporates JAMS Employment Rule 31(a), *see* DRA §5, under which the default rule for non-mandatory agreements is that "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees." JAMS Employment Rule 31(a); *cf.* Cal. Civ. Proc. Code §1284.2 (default rule that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator").

## B. Respondents Wrongfully Refuse to Pay Their Shares of the Arbitration Fees.

After the acquisition of Twitter in October 2022, X began restructuring its workforce and operations, resulting in multiple reductions in force that affected Respondents. Decl.¶9. X offered them significant severance benefits in exchange for a general release of claims, but they declined that offer, choosing instead (like over 2,200 other former Twitter employees) to file demands for arbitration against X before JAMS. Decl.¶¶9-10; Pet.Ex.1, Dkt.1-1. In those demands, Respondents raised a host of federal and state law claims regarding the termination of their employment, including claims under the federal Worker Adjustment and Retraining Notification Act and sex discrimination claims under Title VII of the Civil Rights Act of 1964. Pet.3 n.2, Dkt.1; Pet.Exs.1-3, Dkt.1-1.

After Respondents filed their arbitration demands, JAMS issued a non-refundable filing-fee invoice due on March 27, 2025. Decl.Ex.4. On March 25, 2025, X's counsel reached out to Respondents' counsel by email to confirm whether

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES - 6

Respondents would pay their respective shares of the outstanding invoice as the DRA requires.  Decl.¶15.  Respondents' counsel responded by email on March 25, 2025, stating that Respondents would not pay more than the first $400 of the $2,000 initiation fee for their respective arbitration demands, and that (despite the DRA's contrary terms) Respondents expected X to pay all of the arbitration fees beyond that initial $400 amount.  Decl.¶16.  Because JAMS will not move forward with its arbitration of any of Respondents' claims until its filing-fee invoice is paid, their refusal to pay their full respective shares of that invoice is preventing the parties from arbitrating their claims as required by the DRA.  Decl.¶¶17-18.

## III.  ARGUMENT

Under the FAA, courts must "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted."  *Epic*, 584 U.S. at 506.  If an arbitration agreement is valid and covers the parties' dispute, then under Section 4 of the FAA, a court "shall" order the parties "to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. §4; *accord Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  That principle controls here and requires an order compelling Respondents to arbitrate in accordance with the terms of the DRA by paying their respective shares of the arbitration fees.

### A.  The DRA Requires Respondents To Pay Their Shares of the Arbitration Fees.

In filing their arbitration demands, Respondents have already conceded that

---

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES - 7

the DRA is a valid and enforceable agreement to arbitrate that encompasses their claims.  But Respondents have nevertheless refused to comply with the DRA—and in particular, have refused to pay their individual shares of the arbitration fees, in violation of the explicit DRA provision requiring that arbitration fees "will be apportioned between the parties."  DRA §6.  That breach of their contractual obligations warrants relief.

Section 6 of the DRA directly addresses the parties' responsibility for arbitration fees, and establishes that the parties share responsibility for those fees unless and until the arbitrator decides otherwise. That section, entitled "Paying For The Arbitration," sets forth two classes of cases for fee-sharing purposes:  First, in "all cases where required by law," X "will pay the Arbitrator's and arbitration fees." DRA §6.  Second, in all other cases—i.e., in cases where "under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees"—those fees "will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator."  DRA §6.

This case falls squarely into the second class.  By the express terms of the DRA, the "applicable law" here is the FAA.  DRA §1 ("This Agreement is governed by the [FAA] and evidences a transaction involving commerce."); *see* 9 U.S.C. §2 (FAA applies to "contract[s] evidencing a transaction involving commerce"); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Nothing in the FAA requires X to pay all of the arbitration fees here; so those fees must instead "be apportioned between the parties."  DRA §6; *see, e.g.*, *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1259 (11th Cir. 2003), *abrogated on other grounds as*

stated in *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1195-96 (11th Cir. 2023); *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001).  Indeed, the result would be the same even if (contrary to fact) the DRA were governed not by the FAA, but by California law.  *See* DRA §1 (providing that "[i]f the FAA is found not to apply," the DRA "is enforceable under the laws of the state in which" the employee is employed).  Like the FAA, California law does not impose any requirement that would compel X to pay all of the arbitration fees here.  *See infra* p.16; *cf.* Cal. Civ. Proc. Code §1284.2 (adopting the default rule that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator").  And to the extent California law could be interpreted to impose any such requirement, it would be preempted by the FAA and therefore invalid.  *See infra* pp.16-17, 17 n.1.  In short, because "under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees," those fees must instead "be apportioned between the parties," and any disputes "resolved by the Arbitrator."  DRA §6.

By requiring that the fees be "apportioned between the parties," the DRA sets as a default that the parties will share fees equally, at least unless and until the individual arbitrator hearing the parties' case orders otherwise.  That understanding follows from the plain meaning of the term "apportion," which refers by default to an equal division.  *See, e.g.*, *Apportionment*, Black's Law Dictionary (12th ed. 2024) ("Division into proportionate shares; esp., the division of rights and liabilities among two or more persons or entities"); Oxford English Dictionary 579 (2d ed. 1989) ("To assign in proper portions or shares; to divide and assign proportionally;

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES - 9

to portion out, to share"); Webster's New International Dictionary 132 (2d ed. 1955) ("To divide and assign in just proportion; to divide and distribute proportionally; to make an apportionment of; portion out; to allot"). And that understanding is reinforced by JAMS Employment Rule 31(a)—incorporated into the DRA with the rest of the JAMS Employment Rules, *see* DRA §5—which explicitly provides that when an agreement to arbitrate is not a condition of employment, "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses." JAMS Employment Rule 31(a).

Of course, that default allocation is not set in stone for all time and in all cases. On the contrary, if a party believes a proportional fee allocation is not "in accordance with … applicable law," DRA §6—perhaps, for instance, if a proportional allocation would impose fees "so high as to make access to the forum impracticable," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013)—the party may bring that challenge to the individual arbitrator overseeing its arbitration, and "any disputes" regarding the proper apportionment of fees "will be resolved by the Arbitrator." DRA §6. But unless and until the arbitrator orders otherwise, the default rule under the DRA and JAMS Employment Rule 31(a) governs, and the parties share equal responsibility for paying any arbitration fees.

Respondents' refusal to abide by the DRA and pay their shares of the arbitration fees entitles X to relief under Section 4 of the FAA, which "provides a federal remedy" for the breach of an arbitration agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

written agreement for arbitration may petition … for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. §4. Here, X is "aggrieved by" Respondents' "failure … or refusal" to arbitrate in accordance with the terms of the DRA, *id.*—in particular, by their refusal to honor their obligations to pay their shares of the arbitration fees, which is preventing the arbitration from proceeding.  *See Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (noting that "refus[ing] to arbitrate by choosing not to pay for arbitration" would constitute "a party's 'failure, neglect, or refusal' to arbitrate" under Section 4).  This Court should therefore grant X an order under Section 4 of the FAA requiring Respondents to arbitrate "in the manner provided for" by the DRA, by paying their individual shares of the arbitration fees.  9 U.S.C. §4.

### B.    None of Respondents' Likely Counterarguments Is Persuasive.

 Respondents have no sound basis to evade their contractual obligations under the DRA, and none of the objections that they could raise is persuasive.

### 1.    Neither JAMS Nor Its Minimum Standards Can Excuse Respondents From Paying Their Shares of the Arbitration Fees.

First, JAMS's invocation of its Minimum Standards and reluctance to apportion costs is a reason to compel arbitration according to the DRA, not a justification for Respondents to refuse to honor their end of the bargain.  JAMS has no authority to require X to pay fees that it does not owe under the DRA, which does not incorporate the Minimum Standards and which authorizes only the individual arbitrator presiding over the case (not JAMS itself) to resolve any fee disputes.  And even if the DRA did somehow incorporate the Minimum Standards, those standards

do not require X to pay all of the arbitration fees beyond the first $400 in any event, because the DRA is an opt-out agreement, not a mandatory condition of employment.

In early June 2023, after numerous former Twitter employees filed arbitration demands, X sent a letter to JAMS explaining that the arbitration fees in any such proceedings should be apportioned between the parties under the DRA unless applicable law requires otherwise. *See* Decl.Ex.1. JAMS responded on June 21, 2023, in a letter written by its General Counsel Sheri Eisner. Decl.Ex.2 ("Eisner Letter"). JAMS declared that "notwithstanding any contrary provision in the parties' arbitration agreement," it had decided to apply its own Minimum Standards to any arbitration demands by former Twitter employees, even though those standards "reflect JAMS administrative policy" rather than applicable law, are "separate and apart from the protections that may apply in any given jurisdiction" under applicable law, and "might go further than the law requires in a particular jurisdiction." Eisner Letter at 1. As a result, JAMS stated, it would "continue to issue invoices in these matters consistent with [Minimum] Standard No.6"—that is, it would bill all arbitration fees in the arbitrations beyond the first $400 to X, rather than apportioning them between the parties. Eisner Letter at 1; *see* Minimum Standards ¶B & No. 6 (where "an arbitration is based on a clause or agreement that is required as a condition of employment," the "only fee that an employee may be required to pay" is the initial case management fee, and "[a]ll other costs must be borne by the company"). JAMS did not explain why its Minimum Standards, which apply only where the arbitration agreement "is required as a condition of

employment," would apply to the DRA even though the DRA explicitly permitted employees to opt out. Eisner Letter at 1. Instead, it stated that "any further issue about whether the Minimum Standards apply in a given case should be directed to the arbitrator in the case," while asserting that it would be up to JAMS itself to "make a final determination." *Id.*

JAMS's decision to invoice X for all arbitration fees in these matters cannot allow Respondents to evade their contractual obligations under the DRA. As an initial matter, the DRA does not give JAMS any authority to determine how arbitration fees should be divided. On the contrary, the DRA explicitly provides that "any disputes" regarding the proper apportionment of fees "will be resolved by the Arbitrator"—meaning the individual arbitrator appointed to hear the particular claimant's arbitration, not JAMS. DRA §6; *see* DRA §3 (describing selection of "the Arbitrator"). Under the DRA's plain terms, whatever JAMS may think about how the arbitration fees should be paid is simply irrelevant to the parties' contractual obligations.

Nor do the Minimum Standards themselves affect the parties' contractual obligations. The DRA incorporates the terms of the JAMS Employment Rules, but it does not incorporate the Minimum Standards. *See* DRA §5 (arbitration will be conducted "pursuant to the then-current JAMS Rules"); *see also id.* §3 (defining "JAMS Rules" as "the then-current JAMS Employment Arbitration Rules and Procedures," not the Minimum Standards). That is hardly surprising, given that the Minimum Standards apply only where "an arbitration is based on a clause or agreement that is required as a condition of employment," Minimum Standards ¶B,

---

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES - 13

which the DRA is not.  *See supra* p.4 (describing the DRA's explicit opt-out right); *see, e.g.*, *Young v. Refined Techs., Inc.*, 2022 WL 3012536, at *5 (C.D. Cal. June 17, 2022) ("opt-out provision" is "[o]ne of the typical indicia that a contract is not a condition of employment"); *Essex v. Children's Place, Inc.*, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017) (agreement that "expressly state[s]" that it "is not a mandatory condition of employment," and "has a clear 'opt out' provision," is not a condition of employment); *see also Mohamed v. Uber Techs., Inc.,* 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it.").  And on top of all that, under the DRA, whether X must pay all of the fees for a given arbitration turns on whether X is required to pay those fees "under applicable law," not under the Minimum Standards or any other rules set by the arbitration organization.  DRA §6.  The Minimum Standards accordingly do not affect Respondents' obligation to pay their shares of the arbitration fees under the DRA.

Indeed, reading the DRA to require that X pay all the arbitration fees under the Minimum Standards would make its express fee-sharing provision superfluous, contrary to basic principles of contract law.  *See, e.g.*, 11 Williston on Contracts §32:5 (4th ed. 2024) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous[.]").  Interpreting the DRA to envision that the Minimum Standards apply and require X to pay all the arbitration fees here, and in practically all other cases (despite the plain terms of the DRA and the Minimum Standards themselves), would deprive the DRA's explicit fee-sharing provisions of any meaningful effect.  That is not a

plausible reading of the contract.

X acknowledges that another district court in the Ninth Circuit reached a contrary conclusion, holding that JAMS's decision to invoice X for all arbitration fees controls. *Ma v. Twitter, Inc.*, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025). But *Ma* ultimately denied the petitioners' motion to compel arbitration on other grounds, making its discussion of the fee-sharing issue *dicta*. *See id.* at *13. In any event, as *Ma* recognized, there is a division of authority among the courts that have considered this precise issue. *See id.* at *5 ("Two district courts have addressed the same DRA at issue in this case and have reached different conclusions."). *Compare Frazier v. X Corp.*, 739 F.Supp.3d 219 (S.D.N.Y. 2024), *with Rosa v. X Corp.*, 2024 WL 4903619 (D.N.J. Nov. 27, 2024). X Corp. respectfully submits that *Ma* (and *Frazier*) chose the wrong side of that division, as the DRA's plain terms make clear that neither JAMS nor the Minimum Standards can authorize Respondents to ignore their contractual obligation to pay their individual shares of the arbitration fees.

## 2. California Law Does Not Excuse Respondents From Paying Their Shares of the Arbitration Fees.

Respondents also cannot evade their contractual obligations to pay their individual shares of the arbitration fees by relying on California law. The DRA is governed by the FAA, not by California law; and even if California law were to apply, its arbitration-specific rule requiring employers to pay all arbitration fees in cases involving mandatory arbitration agreements is inapplicable here and would be preempted by the FAA in any event.

To begin with, the DRA makes explicit that it "is governed by" the FAA, not

California law, and that California law is relevant only "[i]f the FAA is found not to apply." DRA §1. Since the FAA plainly *does* apply to the DRA (which indisputably "evidences a transaction involving commerce," DRA §1; *see* 9 U.S.C. §2), California law has no role to play here. *See Hernandez v. Sohnen Enters., Inc.*, 321 Cal.Rptr.3d 283, 297-98 (Cal. Ct. App. 2024) ("[I]f parties agree to apply the FAA's procedural provisions, rather than the [CAA's] procedures[,] … state arbitration procedures do not apply[.]"). And because the FAA does not require X to pay all the arbitration fees, the fees must "be apportioned between the parties in accordance with [the FAA]," regardless what California law might otherwise require. DRA §6.

But even if California law were the "applicable law" here, it would not require X to pay all of the arbitration fees. The California Supreme Court has held that for certain employment-related arbitration proceedings arising from "mandatory" arbitration agreements—i.e., agreements "which an employer imposes on a prospective or current employee as a condition of employment"—the employer must pay all arbitration fees. *Armendariz*, 6 P.3d at 674. But as already described, the DRA was optional, not mandatory, and explicitly informed employees (three times, and in bold font each time) that they were entitled to opt out of that agreement. *See supra* p.4. The employer-pays rule that the California Supreme Court adopted for mandatory agreements in *Armendariz* accordingly does not apply here even on its own terms.

In any event, the *Armendariz* rule is preempted by the FAA. By its terms, the employer-pays rule *Armendariz* adopted applies only to arbitration agreements; indeed, the California Supreme Court has expressly recognized that the

"*Armendariz* cost-shifting requirement is unique to arbitration" because "arbitration, alone among contract provisions," carries an obligation for the parties to cover the costs of the arbitration forum. *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 989 (Cal. 2003). But as the U.S. Supreme Court has made clear, the FAA preempts any "legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Viking*, 596 U.S. at 650. That perfectly describes the *Armendariz* rule, which applies only in the arbitration context and imposes an arbitration-only requirement that employers must pay all arbitration fees even when the parties have agreed otherwise. While the California Supreme Court has tried to describe *Armendariz* as merely an application of "general state law contract principles," *Little*, 63 P.3d at 989, that characterization of *Armendariz* is belied by its very nature, which is inescapably arbitration-specific. In any event, even "generally applicable contract defenses" cannot "stand as an obstacle to the accomplishment of the FAA's objectives," which includes "ensur[ing] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-44 (2011). Respondents accordingly cannot rely on *Armendariz* as a basis for evading their obligations under the DRA to pay their individual shares of the arbitration fees.[1]

---

[1] *Armendariz*'s categorical rule that employers must shoulder all arbitration fees also diverges from the individualized, case-by-case approach courts have used under the FAA to determine whether arbitration fees pose a prohibitive cost for particular parties. *See, e.g.*, *Bradford*, 238 F.3d at 556 (adopting a "case-by-case analysis" of whether arbitration fees deprive the claimant of "an adequate and accessible substitute to litigation"); *cf. Little*, 63 P.3d at 992-93 (acknowledging that the California Supreme Court "considered and rejected in *Armendariz* a case-by-case

### 3. California Law Cannot Penalize X For Insisting on Its Contractual Rights Under the DRA.

Finally, Respondents cannot seek to penalize X under California law for insisting that Respondents pay their individual shares of the arbitration fees. As already explained, the DRA is governed by the FAA, not California law. Regardless, any effort to rely on California Code of Civil Procedure §§1281.97-.99 would be unavailing. Those California statutes provide that in any employment arbitration where "state or federal law or the rules of the arbitration provider" require the employer to pay arbitration fees to initiate or continue the arbitration, an employer who fails to pay those fees within 30 days after they are due "is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration" under the CAA. Cal. Civ. Proc. Code §§1281.97(a), 1281.98(a). At that point, those statutes permit the employee to (among other options) "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." *Id.* §§1281.97(b)(1), 1281.98(b)(1). If the employee takes that option, the court "shall impose sanctions" on the employer, *id.* §§1281.97(d), 1281.98(c)(2), by "ordering the [employer] to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee … as a result," *id.* §1281.99(a). "In addition," the court "may order" sanctions including "prohibiting the [employer] from conducting discovery in the civil action," "rendering a judgment by default against the [employer]," or "treating the [employer] as in contempt of court," unless

---

approach to arbitration costs"). That divergence represents yet another conflict between *Armendariz* and federal arbitration law.

---

the court finds that the employer "acted with substantial justification or that other circumstances make the imposition of the sanction unjust." *Id.* §1281.99(b).

None of those provisions is applicable here.  To begin with, because the DRA "is governed by the [FAA]," DRA §1, "the procedures of the CAA, including section 1281.97, do not apply." *Hernandez*, 321 Cal.Rptr.3d at 299; *Mosley v. Wells Fargo & Co.*, 2024 WL 4804972, at *4 (N.D. Cal. Nov. 14, 2024).  And even if the CAA's procedural provisions did govern the DRA, the plain language of the agreement makes clear that arbitration fees "will be apportioned between the parties" where (as here) applicable law does not require X to pay them in full.  DRA §6.  Given that express apportionment provision, neither "state or federal law [n]or the rules of the arbitration provider" requires X to pay all of the arbitration fees, making §§1281.97-99 inapplicable.  Cal. Civ. Proc. Code §§1281.97(a), 1281.98(a).

Those California statutes are also preempted by the FAA.  The FAA establishes an "equal-treatment principle" that preempts "any state rule discriminating on its face against arbitration." *Viking*, 596 U.S. at 650.  By "mak[ing] arbitration provisions unenforceable on arbitration-specific grounds," §§1281.97-.99 run afoul of that equal-treatment principle and are therefore preempted. *Belyea v. GreenSky, Inc.*, 637 F.Supp.3d 745, 756 (N.D. Cal. 2022); *see, e.g.*, *Davis v. Movement Mortg., LLC*, 2024 WL 5294290, at *2 (E.D. Cal. Dec. 10, 2024); *Martinez v. Refinitiv, Ltd.*, 2024 WL 5424373, at *4 (C.D. Cal. Nov. 14, 2024).  In particular, these provisions substantively and impermissibly rework background principles of contract law regarding waiver and material breach in a manner unique to arbitration. *E.g.*, *Burgos v. Citibank, N.A.*, 745 F.Supp.3d 959,

965-66 (N.D. Cal. 2024).  Waiver and breach are traditionally questions that turn on the specific facts surrounding the alleged violation of a contract—not bright-line rules, like the 30-day cut off dictated by Cal. Civ. Proc. Code §§1281.97(a)(1), .98(a)(1).  *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005).  The California statutes' "clear departure from ordinary principles of waiver and breach when applied to arbitration proceedings" is accordingly preempted.  *Burgos*, 745 F.Supp.3d at 965.[2]

## IV.    CONCLUSION

For the foregoing reasons, this Court should enter an order under Section 4 of the FAA compelling Respondents to arbitrate their respective claims against X and to pay their individual shares of the arbitration fees as required by the DRA.

---

[2] The cases from this District reaching a contrary conclusion are unpersuasive. *See Costa v. Melikov*, 2022 WL 18228248 (C.D. Cal. Oct. 21, 2022); *Nyerges v. Pac. Sunwear of Cal., LLC*, 2022 WL 20717551 (C.D. Cal. July 6, 2022); *Agerkop v. Sisyphian LLC*, 2021 WL 1940456, at *5 (C.D. Cal. Apr. 13, 2021); *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *7-*10 (C.D. Cal. Jan. 19, 2021).  Two were decided before the Supreme Court's elucidation of the "equal-treatment principle" in *Viking*, and the two decided after did not grapple with the further guidance *Viking* provided.  That is why a judge from this District recently "join[ed] [the] several federal and state courts" holding that the FAA preempts Cal. Civ. Proc. Code §§1281.97(a)(1), .98(a)(1), because those cases faithfully applied "the Supreme Court's more recent decisions addressing FAA preemption."  *Martinez*, 2024 WL 5424373, at *3-*4.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT (*pro hac vice*)
C. HARKER RHODES IV (*pro hac vice*)
MITCHELL K. PALLAKI (*pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com
mitchell.pallaki@clementmurphy.com

MAX FISCHER (Bar No. 226003)
MORGAN, LEWIS & BOCKIUS
LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel.: (213) 612-2500
Fax: (213) 612-2501
max.fischer@morganlewis.com

ERIC MECKLEY (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS
LLP
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
eric.meckley@morganlewis.com

*Attorneys for Petitioner X Corp.*

May 1, 2025

## <u>L.R. 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Petitioner X Corp., certifies that this brief is 5,598 words and 20 pages, which:

_____ complies with the word limit of L.R. 11-6.1.

_ X _ complies with the word and page limits set by the Court's Standing Order dated April 1, 2025 (ECF No. 10).

Respectfully submitted,

Dated: May 1, 2025

s/Paul D. Clement
PAUL D. CLEMENT (*pro hac vice*)
CLEMENT & MURPHY, PLLC

*Counsel for Petitioner*