SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice forthcoming*)
(bmanewith@llrlaw.com)
JACK BARTHOLET (*pro hac vice forthcoming*)
(jbartholet@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:   (617) 994-5800
Facsimile:   (617) 994-5801

*Attorneys for Respondents*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP.<br><br>            Petitioner,<br><br>    v.<br><br>KYLE BAHR, et al.,<br><br>            Respondents. | Case No. 2:25-cv-02766-RGK-MBK<br><br>**RESPONDENTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927, AND THE INHERENT POWER OF THE COURT**<br><br>Magistrate Judge Michael B. Kaufman<br>Courtroom: 550<br>Date: August 6, 2025<br>Time: 10:00 A.M. |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, on August 6, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 550 of the above-entitled Court, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California, before Magistrate Judge Michael B. Kaufman, Respondents Kyle Bahr, Kevyn Bele-Binda, Yomna Elsayed, Shazia Haq, Farah Mynaf, Frank Rodriguez, and Oleg Trofimov (collectively, "Respondents") will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent power of the Court, for an order imposing sanctions upon Petitioner X Corp. and its attorneys. Respondents' motion is based on the accompanying Memorandum of Points and Authorities, documents incorporated by reference or subject to judicial notice, and any other materials presented at the time of the hearing.

## STATEMENT OF RELIEF SOUGHT:

Respondents seek an order imposing sanctions upon Petitioner and its attorneys in this matter pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent powers, for filing the Petition and Motion to Compel Arbitration in this case. The Court should impose sanctions upon Twitter and its attorneys in this action; order them to pay Respondents' arbitration fees, monetary sanctions, and all reasonable attorneys' fees and other expenses resulting from their sanctionable conduct; and award any other relief it believes appropriate.

## LOCAL RULE 7-3 PRE-FILING CONFERENCE:

This motion is made following the procedures outlined in Federal Rule of Civil Procedure 11(c), and after conferring with counsel for Petitioner counsel

pursuant to L.R. 7-3 through May 20, 2025, at which time counsel for Petitioner indicated their opposition to this Motion. The parties were unable to reach a resolution that eliminates the necessity of a hearing on Respondents' Motion.

Respectfully submitted,

Kyle Bahr, et al., Respondents,
By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
Bradley Manewith (*pro hac vice forthcoming*)
Jack Bartholet (*pro hac vice forthcoming*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com;
bmanewith@llrlaw.com;
jbartholet@llrlaw.com

Dated:          May 29, 2025

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     RELEVANT FACTUAL AND PROCEDURAL
        BACKGROUND .......................................................................................... 4

III.    ARGUMENT ................................................................................................. 12

        A.    The Court Should Grant Respondents' Motion for
              Sanctions Pursuant to Rule 11 ............................................................... 12

        B.    The Court Should Grant Respondents' Motion for
              Sanctions Pursuant to 28 U.S.C. § 1927 .............................................. 16

        C.    The Court Should Grant Respondents' Motion for
              Sanctions Pursuant to the Court's Inherent Powers ........................... 19

IV.     CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC v. Pyett*,
　　556 U.S. 247 (2009)..................................................................19

*Adler v. Twitter, Inc.*,
　　Case No. 3:23-cv-01788-JD (N.D. Cal) ...................................5

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
　　513 U.S. 265 (1995)..................................................................19

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
　　215 F. Supp. 3d 919 (C.D. Cal. 2015 ......................................18

*Borodaenko v. Twitter, Inc.*,
　　2023 WL 3294581 (N.D. Cal. May 5, 2023)...............................6

*Borodaenko v. Twitter, Inc.*,
　　Case No. 3:22-cv-07226-AMO (N.D. Cal.) .................................5

*Chambers v. NASCO, Inc.*,
　　501 U.S. 32 (1991)....................................................................20

*Christian v. Mattel, Inc.*,
　　286 F.3d 1118 (9th Cir. 2002) ..................................................14

*Circuit City Stores, Inc. v. Adams*,
　　532 U.S. 105 (2001)..................................................................18

*Cooke v. United States*,
　　267 U.S. 517 (1925)..................................................................19

*Cooter & Gell v. Hartmarx Corp.*,
　　496 U.S. 384 (1990)..................................................................15

*Cornet v. Twitter, Inc.*,
　　2023 WL 187498 (N.D. Cal. Jan. 13, 2023).................................6

*Cornet v. Twitter, Inc.*,
　　Case No. 1:23-cv-441-CFC (D. Del.) ..........................................5

*Cornet, et al v. Twitter, Inc.*,
 Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022) ................................4

*Edwards v. Gen. Motors Corp.*,
 153 F.3d 242 (5th Cir. 1998) ................................................................18

*Epic Sys. Corp. v. Lewis*,
 584 U.S. 497 (2018)..............................................................................18

*EscapeX IP LLC v. Google LLC*,
 2024 WL 557729 (N.D. Cal. Feb. 12, 2024)...........................................17

*Fink v. Gomez*,
 239 F.3d 989 (9th Cir. 2001) ...............................................................20

*Frazier v. X Corp*,
 739 F. Supp. 3d 219 (S.D.N.Y. 2024) ............................................. passim

*Gadala v. Twitter, Inc.*,
 No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023) ................................6, 9

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
 655 F. Supp. 3d 899 (N.D. Cal. 2023)....................................................20

*In re Itel Securities Litigation*,
 791 F.2d 672 (9th Cir.1986) .................................................................20

*Jacobs v. USA Track & Field*,
 374 F.3d 85 (2d Cir. 2004) ..................................................................12

*Kendrick v. Zanides*,
 609 F. Supp. 1162 (N.D. Cal. 1985)......................................................18

*Lahiri v. Universal Music & Video Distribution Corp.*,
 606 F.3d 1216 (9th Cir. 2010) .............................................................17

*Ma v. Twitter, Inc.*,
 2025 WL 436636 (N.D. Cal. Feb. 7, 2025)....................................... passim

*MacClelland v. Cellco P'ship*,
 609 F. Supp. 3d 1024 (N.D. Cal. 2022)....................................................4

*Mars Steel Corp. v. Continental Bank N.A.,*
    880 F.2d 928 (7th Cir. 1989) ...............................................................14

*MHC Inv. Co. v. Racom Corp.,*
    323 F.3d 620 (8th Cir. 2003) ...............................................................15

*Moser v. Bret Harte Union High Sch. Dist.,*
    366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................... 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ...............................................................19

*Mulato v. Wells Fargo Bank, N.A.,*
    76 F. Supp. 3d 929 (N.D. Cal. 2014)........................................20

*Primus Auto. Fin. Servs., Inc. v. Batarse,*
    115 F.3d 644 (9th Cir. 1997) ...............................................................19

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980)...............................................................17

*Rodriguez v. Twitter, Inc.,*
    2023 WL 3168321 (N.D. Cal. May 1, 2023)....................................6

*Rosa v. X Corp.,*
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) ......................... 9, 10

*Sneller v. City of Bainbridge Island,*
    606 F.3d 36 (9th Cir. 2010) ...............................................................13

*Stewart v. American International Oil & Gas Co.,*
    845 F.2d 196 (9th Cir. 1988) ...............................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010)...............................................................19

*Strifling v. Twitter, Inc.,*
    Case No. 4:22-cv-07739-JST (N.D. Cal.) .........................................5

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
    809 F.2d 626 (9th Cir. 1987) ...............................................................17

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ............................................................... 14, 15

*Weinberg v. Twitter, Inc.*,
    4:23-cv-04016-DMR (N.D. Cal.) ...................................................................6

*X Corp v. McGrath et al.*,
    3:25-cv-00748-W-MMP (S.D.Cal. 2025) ......................................................3

*X Corp. v. Bahr et al.*,
    2:25-cv-02766-RGK-KES (C.D.Cal. 2025) ..................................................3

*Zeman v. Twitter, Inc.*,
    Case No. 3:23-cv-01786-SI ...........................................................................6

**Statutes**

28 U.S.C. § 1927 .................................................................................... 6, 15, 18

**Rules**

Fed. R. Civ. Pro 11......................................................................................6

Fed. R. Civ. Pro. 11(b) ...............................................................................15

Fed. R. Civ. Pro. 11(b)(1) ..........................................................................15

Fed. R. Civ. Pro. 11(b)(2) ..........................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this case, Twitter[1] has made a mockery of the principle that arbitration should be an efficient, cost-effective means of dispute resolution.  Perplexingly, Twitter has petitioned to compel former employees to arbitration ***who have already attempted to pursue their claims against Twitter in arbitration***.  It is Twitter, not the employees, who has blocked those arbitrations from moving forward.  Now Twitter seeks to impose on the Court's time and resources to seek arbitration in a case for which no party argues that arbitration should not proceed.  ***Indeed, it is the employees who would like to see Twitter proceed with arbitration, as required by the parties' agreements to arbitrate.***  It is Twitter that is refusing to engage in arbitration with these employees, under the rules of the arbitration provider that Twitter itself chose.  Twitter's abusive tactics—delaying the employees' claims and frivolously invoking the Court's resources—are precisely what Rule 11, Section 1927, and the inherent powers of the Court are designed to thwart.  This Court should impose sanctions on Twitter and its counsel for bringing this frivolous petition to compel arbitration, when it is Twitter that is refusing to participate in or cooperate with the arbitrations.

Respondents, former employees of Twitter, have been trying to arbitrate their claims but have not been able to, due to Twitter's refusal to abide by the arbitration rulings that have been issued requiring it to pay the arbitration fees.  Twitter should

---

[1]   In or about March 2023, Twitter, Inc. merged with X Corp., and as a result Twitter, Inc. and X Corp. are a single entity. Twitter, Inc. and X Corp. are referred to herein as "Twitter."

be sanctioned for wasting the Court's and the parties' time by bringing this case in court, rather than just proceeding with the arbitrations that it claims to want *and that Respondents have already tried to pursue.*

For more than two years now, Twitter has been arbitrating disputes brought by its former employees who worked mostly in California (but some in Nevada and Oregon, all states in which Twitter agreed, at least at first, to pay the arbitration fees it was ordered to pay), as well as a handful of cases in other states (including New York, Massachusetts, and Washington). Twitter has refused, however, to proceed with many hundreds of arbitrations in other states, refusing to comply with the orders of JAMS and AAA that it pay the full arbitration fees (other than the initial filing fees that the claimants are required to pay). Recently, Twitter informed Respondents for the first time that it will not agree to pay for arbitrations even in California and brought this case to compel arbitration for a number of our clients who worked for Twitter in California – for whom Respondents had already filed arbitration demands, with which Twitter declined to cooperate. Twitter at first declined to cooperate with these cases by refusing to produce signed arbitration agreements for these claimants; after the claimants were able to locate and submit their signed arbitration agreements to JAMS, Twitter then refused to move forward with their arbitrations, arguing that it should not have to pay the full arbitration fees for their cases. *See* Declaration of Shannon Liss-Riordan (attached as Exhibit A) ¶ 2.[2] These antics are sanctionable, and this Court should not countenance them.

_____

[2]    In *Ma v. Twitter, Inc.*, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025), the court held that Twitter must pay the arbitration fees JAMS ordered it to pay, but further found that the court could not compel arbitration for petitioners outside of this

Twitter has bizarrely filed this Petition to compel arbitration, even though Respondents have been trying to arbitrate with Twitter.  Twitter's new refusal to pay arbitration fees it has been ordered to pay, even in California (where it has agreed for the past two and a half years to pay arbitration fees) is simply a new and obstructionist tactic to attempt to insulate itself from facing legal accountability to these employees in any forum.[3]

These Petitions are merely the latest salvo in a course of conduct employed by Twitter and its counsel to thwart, at every step, its former employees from being able to vindicate their right to be heard and have their claims adjudicated. When claims are filed in court, Twitter compels them to arbitration. When claims are filed in arbitration, Twitter refuses to pay the fees it has been ordered to pay and thereby halts the arbitrations from moving forward. When claimants secure judicial rulings that Twitter must pay the fees allocated to it, Twitter again goes on the offensive, filing this frivolous action to compel arbitration, even though it is the party that is preventing these arbitrations from going forward.[4]

---

District. Respondents then began to file petitions with courts across the country seeking to compel Twitter to arbitration. Ex. A (Liss-Riordan Decl.) ¶ 3.

[3]    Along with this Petition, Twitter has also filed identical actions in California federal courts in two other districts.  *See X Corp. v. McGrath et al.*, 25-CV-748-MPP (S.D. Cal. 2025); *X Corp v. Adusei et al.*, 4:25-cv-02926-JST (N.D. Cal. 2025).  Respondents in those cases are similarly moving for sanctions against Twitter.

[4]    Respondents in this case filed arbitrations, but some did not move forward because the employees did not provide their signed arbitration agreements. However, when they later located their signed agreements and submitted them to JAMS, rather than allowing these cases to move forward, Twitter instead refused

This Court should guard our judicial system against such abusive conduct by Twitter and its attorneys, and it should use the tools at its disposal to impose sanctions that make clear these obstructive and delaying tactics will not be tolerated.[5]

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Since at least 2017, Twitter has included arbitration clauses in its standard employment agreements with employees throughout the United States, including the Respondents in this action. *See* Ex. A (Liss-Riordan Decl.) ¶ 4; Twitter's Mot. to Compel Arbitration and Supporting Declaration from Fidelma Callaghan in *Cornet, et al v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022), Dkt. 18 at 8-9 and Dkt. 18-1 at 2 (attached collectively as Exhibit B).    The arbitration agreement requires the parties to arbitrate "any disputes arising out of or related to [an employee's] employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates." Arbitration Agreement ¶ 1.[6] The agreement also provides: "Disputes covered by this Agreement include,

_____

to pay the fees and then brought this case in court to compel arbitration.  *See* Ex. A (Liss-Riordan Decl.) ¶ 10-11.

[5]    *See generally MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022) (citations, quotations, and alterations omitted) ("Requiring the [claimants] who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration is unreasonably favorable to Verizon. Delaying the ability of one to vindicate a legal claim by years…conflicts with one of the basic principles of our legal system—justice delayed is justice denied.").

[6]    Copies of the arbitration agreement can be found at Dkt. 1-1. As Petitioners explained in their Petition, "Depending on when Respondents were hired, they either signed a November 2018 version of the [arbitration agreement] or a June

without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." *Id.* ¶ 1. It further delegates "any disputes" regarding the apportionment of arbitration fees. *Id.* ¶ 6.

Twitter's standard arbitration agreement for the past several years (and the one signed by Respondents) directs that any such arbitration be brought with the arbitration provider JAMS, pursuant to the then-current JAMS Employment Arbitration Rules and Procedures. *Id.* ¶ 5.

Since Elon Musk's acquisition of Twitter in October 2022, the company has been accused of a variety of unlawful acts, including failing to pay laid off employees promised severance payments, discriminating against employees on the basis of sex, race, age, and disability, failing to pay promised bonuses, violating the WARN Act and FMLA, and other violations. A number of employees filed class action cases in court challenging these violations.[7] However, any time an employee who was bound by an arbitration agreement brought a claim in court, Twitter moved

_____

2020 version. Although there are some formatting differences between the two versions, the relevant language is the same." Pet. at 1 n.1. Like Petitioners, because there is no material difference between the two versions, this Motion refers to both collectively as the arbitration agreement.

[7]    *See e.g.*, *Cornet v. Twitter, Inc.*, Case No. 1:23-cv-441-CFC (D. Del.); *Borodaenko v. Twitter, Inc.*, Case No. 3:22-cv-07226-AMO (N.D. Cal.); *Strifling v. Twitter, Inc.*, Case No. 4:22-cv-07739-JST (N.D. Cal.); *Adler v. Twitter, Inc.*, Case No. 3:23-cv-01788-JD (N.D. Cal); *Zeman v. Twitter, Inc.*, Case No. 3:23-cv-01786-SI; *Schobinger v. Twitter, Inc.*, Case No. 3:23-cv-03007-VC (N.D. Cal.); *Weinberg v. Twitter, Inc.*, 4:23-cv-04016-DMR (N.D. Cal.).

to compel that employee's claim to arbitration, and Twitter was successful in those motions.[8]

After Twitter succeeded in moving to compel employees' claims to arbitration in various court cases, more than 2,000 of Twitter's former employees filed claims in arbitration in an attempt to pursue their legal claims against Twitter. Ex. A (Liss-Riordan Decl.) ¶ 5. While a small percentage of these claims were filed with AAA (by agreement of the parties, for employees whose arbitration agreements predated the JAMS version), the majority — and all of Respondents' claims — were filed with JAMS pursuant to their agreements. *Id.* at ¶ 7.

When those arbitration demands were filed, JAMS informed Twitter that it would be responsible for paying the full arbitration fees (other than initial filing fees for which the claimants were responsible).[9] Twitter did not initially object to the application of the JAMS Minimum Standards. Rather, it filed responses to the

---

[8]   *See Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023); *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *see also* Ex. A (Liss-Riordan Decl.) ¶ 6.

[9]   At the outset of each JAMS arbitration, upon receiving copies of the parties' arbitration agreement, JAMS notified the parties that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards") would apply, which requires the employer to pay arbitration fees, other than initial filing fees. *See* Letter from JAMS General Counsel Sheri Eisner dated June 21, 2023 (attached as Exhibit G).
Like JAMS, AAA also determined that Twitter would be required to pay all arbitration fees (other than a minimal initial fee which the employees would pay). Ex. A (Liss-Riordan Decl.) ¶ 9.

employees' arbitration demands and began paying its share of the fees. Ex. A (Liss-Riordan Decl.) ¶ 8. However, on June 2, 2023, Twitter changed course with respect to most claimants located outside of California, Nevada, and Oregon, objecting to having to pay the full fees for cases outside of these states. *Id.* ¶ 8; Ex. G (Eisner Letter). Twitter sent a letter to JAMS' Senior Vice President and General Counsel, Sheri Eisner, requesting that JAMS' fees be split equally by the parties for arbitrations outside California, Nevada, and Oregon. Ex. G. Ms. Eisner responded on June 21, 2023, denying Twitter's request and confirming that the JAMS Minimum Standards — required by the JAMS Rules the parties agreed to in their arbitration agreement — would apply to all of these cases, and that Twitter was responsible for the full arbitration fees less the initial filing fees paid by the employees. *Id.*

On June 28, 2023, Twitter informed JAMS that it would nevertheless refuse to pay the fees it had been ordered to pay in those cases.[10] Letter from Sari

---

[10]    Twitter refused to proceed with any cases in which the claimants could not produce signed copies of their arbitration agreements. Twitter originally said that claimants could request copies of their signed arbitration agreements, but the email address it provided for them doing so was inoperative and bounced back. Claimants' counsel then sent a list of employees for whom she had attempted to request copies, but Twitter refused to provide the signed agreements, arguing that each individual claimant would need to provide proof of their efforts to obtain copies from this defunct email — and then subsequently added additional barriers, like requiring claimants to each sign formal documents authorizing their counsel of record to obtain their signed agreements and intimating a limit of 40 requests per month. Ex. A (Liss-Riordan Decl.) ¶ 10.

    Ultimately, the Respondents in this case were able to locate their signed arbitration agreements and submitted them to JAMS.  That is when Twitter turned an about-face and declared that it would not pay the fees for California claimants either and proceeded to file this (frivolous) Petition to Compel Arbitration. *Id.* at 11.

Alamuddin dated June 28, 2023 (attached as Exhibit C). As a result, JAMS has stayed the pending arbitrations outside of California, Nevada, and Oregon (hundreds of arbitrations), and consequently, dozens of initial case management conferences that were previously scheduled were cancelled. Exhibit A (Liss-Riordan Decl.) ¶ 12; JAMS Minimum Standards (attached as Exhibit D) at 5 ("[I]f compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination.").

Several claimants then filed a Petition to Compel Arbitration, seeking to compel Twitter to arbitrate in accordance with its arbitration agreement and as ordered by its chosen arbitration providers, JAMS and AAA. *See Ma*, 2025 WL 436636 at *1. Other claimants petitioned the U.S. District Court for the Southern District of New York for the same relief. *See Frazier v. X Corp*, 739 F. Supp. 3d 219 (S.D.N.Y. 2024). Both courts found that Twitter is "obligated to pay the initial arbitration fees, as ordered by JAMS, so that the arbitrations as to [the claimants] can move forward." *Ma*, 2025 WL 436636, at *9; *accord Frazier*, 739 F. Supp. at 221.[11]

_____

[11]    *See also* Order in *Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023) (attached as Exhibit E) ("Plaintiff shall only be required to pay the JAMS arbitration filing fee up to the amount she would pay to initiate an action in this Court; [ ] Defendants shall be required to pay all other costs of arbitration[.]"). *But see Rosa v. X Corp.*, 2024 WL 4903619, at *10–11 (D.N.J. Nov. 27, 2024), *designated as "Not For Publication"* (granting Twitter's motion to compel arbitration against litigant who brought civil suit and apportioning arbitration fees

equally, after finding litigant "appear[ed] to have waived his opportunity to rebut
the arguments put forth by Twitter on this topic because he has either not provided
case law or properly addressed Twitter's claims").

The court in *Ma* explained why it agreed with the fulsome and caselaw-
supported reasoning in *Frazier* and rejected the incomplete and faulty reasoning in
*Rosa*:

> In *Frazier v. X Corp.*, the court "grant[ed] the motion to compel
> arbitration and order[ed] Twitter to pay all ongoing arbitration fees for
> petitioners' claims unless and until the individual arbitrator in each of
> petitioners' respective arbitrations rules to the contrary." 739 F. Supp.
> 3d 219, 231 (S.D.N.Y. 2024). The parties agreed that "the ultimate
> decision of who is required to pay ongoing arbitration fees must be
> resolved by an individual arbitrator," *id.* at 224, and the court
> concluded that "interim fee determinations—or at least those relating
> to the Minimum Standards—will be made by JAMS in the first
> instance, then later reviewed by an individual arbitrator or court," *id.*
> at 226. The court explained that "[w]hether the Minimum Standards
> apply is ... a procedural issue generally reserved for the arbitrator,"
> and that "[t]he JAMS General Counsel is, in effect, standing in the
> shoes of the individual arbitrator until one has ruled to the contrary."
> *Id.* at 227–28. However, the court went on to explain that if it were to
> review the decision to apply the Minimum Standards de novo, it
> would reach the same result as JAMS and conclude that they apply to
> the agreement at issue because, even though employees could opt out
> of arbitration after signing the DRA, they were nonetheless required
> to sign the DRA as a condition of employment. *Id.* at 228–30. Finally,
> the court concluded that requiring X Corp. to pay initial arbitration
> fees did not conflict with the DRA's provision that fees would be
> "apportioned" because requiring "that fees must be 'apportioned' does
> not dictate *how* the fees should be apportioned." *Id.* at 230 (emphasis
> in original).
>
> Several months later, the court in *Rosa v. X Corp.* reached a contrary
> result, concluding that the Minimum Standards did not apply to the
> agreement because employees had the ability to opt out. *Rosa v. X
> Corp.* (designated as "not for publication"). The court concluded that
> Section 6 of the agreement should be "given the meaning asserted by
> Twitter" so as not to render the apportionment language superfluous.

At the same time, Twitter *proceeded* with paying for and participating in arbitrations in California, Nevada, and Oregon, as well as with a small number of select arbitrations outside of these states that had already been underway by the time

> *Id.* at *11. It then concluded that X Corp. did not waive its right to compel arbitration by refusing to pay the initial JAMS fees, and it ordered the parties "to arbitrate pursuant to the terms of the DRA. Rosa and Twitter shall each pay half of the requisite JAMS fee in order to properly initiate arbitration proceedings as Section 6 of the DRA is given effect regarding apportionment of the initial fee-sharing since JAMS Minimum Standards [are] inapplicable." *Id.* at *12–13. *Rosa* did not cite *Frazier*, nor did it address questions regarding delegation or the meaning of "apportion."
>
> Having reviewed both *Frazier* and *Rosa* and considered all of the parties' arguments, this Court concludes, for the reasons discussed below, that JAMS was authorized to make the initial determination regarding allocation of fees, and that its determination did not conflict with terms of the DRA. In states where applicable law does not require the employer to pay all arbitration fees, the DRA delegates apportionment of fees to the arbitrator. ECF No. 6-1 at 4 (Section 6). The arbitrator has not been able to make that determination in Petitioners' cases because X Corp.'s failure to pay fees as required by JAMS has prevented any of the arbitration proceedings from moving forward…. Accordingly, the Court defers to JAMS's determination, made by its general counsel, regarding the apportionment of the initial arbitration fees and finds no basis to evaluate JAMS's interpretation of its own rules. JAMS has determined that the Minimum Standards apply, and that determination complies with the DRA.

*Ma*, 2025 WL 436636, at *8.

Ultimately, while the court in *Ma* decided, in its words, to "exercise[] its discretion to stay proceedings as to [claimants who worked outside the district] so that they may move to compel arbitration in a venue where 'the terms of the agreement' can be enforced by compelling arbitration in the agreed forum," the court nevertheless unequivocally found that Twitter is required to pay the arbitration fees as ordered by JAMS. *Id.* at *10.

Twitter first decided to object to the allocation of fees. Ex. A (Liss-Riordan Decl.) at 13. By the time Twitter filed the Petition in this matter, it had arbitrated to final hearing approximately 100 matters and received awards in 29 matters.

Faced with nearly 2,000 more arbitrations in line that it would need to pay for — and flying in the face of two federal court decisions to the contrary — Twitter then suddenly decided to reverse course with respect to these *California* claimants, too, now unilaterally decreeing that JAMS was wrong in its decision that Twitter would have to pay arbitration fees in California, as well as the other states to which it had been objecting to paying fees. Ex. A (Liss-Riordan Decl.) ¶ 14; Dkt. 1 (Pet.). Suddenly, Twitter claims, *it* was being prohibited from arbitrating because Respondents, in accordance with JAMS' decision, would not agree to evenly split these arbitration fees — despite, as has already been explained, there was no obligation for JAMS to order the fees to be split between the parties. *Ma*, 2025 WL 436636, at *6–7; *accord Frazier*, 739 F. Supp. 3d at 230–31.

Twitter continues to press this frivolous argument even though the court in *Ma* expressly held that Twitter's arbitration agreement delegates the fee apportionment issue to JAMS — and the court in *Frazier* held that, even if it did not delegate this issue, JAMS' interpretation of the agreement was correct. *Ma*, 2025 WL 436636, at *7–8; *Frazier*, 739 F. Supp. 3d at 227–31. Twitter presses these meritless arguments despite the fact that both the *Ma* court and the *Frazier* court expressly explained that Twitter could always ask individual arbitrators to apportion these fees differently once they are appointed. And Twitter and its attorneys now press these arguments in a vexatious attempt to obstruct and delay Respondents'

arbitrations, despite knowing that they may not challenge arbitrators' decisions on fee allocations by way of a Petition to Compel Arbitration (when Respondents are themselves trying to use the arbitration procedures that Twitter forced them to use). "Where there has been no refusal to arbitrate, petitioner cannot use Section 4 as a vehicle to seek review of the AAA's decision about how to proceed with the arbitration process." *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004).

On May 6, 2025, pursuant to Rule 11, Respondents served an advance copy of this Motion on Petitioner's counsel. Ex. A (Liss-Riordan Decl.) ¶ 15; "Safe Harbor" Letter (attached as Exhibit F). Respondents now file this Motion, following expiration of the 21-day "safe harbor" period.

## III.   ARGUMENT

The Court should impose sanctions upon Twitter and its attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and its inherent powers, for filing the Petition and Motion to Compel Arbitration in this case.

### A.   The Court Should Grant Respondents' Motion for Sanctions Pursuant to Rule 11

Rule 11 provides that when attorneys presents "a pleading, written motion, or other paper" to a court, they "certify[y] that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation … [and] the claims, defenses, and other legal contentions are warranted by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R.
Civ. Pro. 11(b)(1), (b)(2). "Rule 11 authorizes a court to impose a sanction on any
attorney, law firm, or party that brings a claim for an improper purpose or without
support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 36, 638–
39 (9th Cir. 2010) ("If, after notice and a reasonable opportunity to respond, the
court determines that Rule 11(b) has been violated, the court may impose an
appropriate sanction on any attorney, law firm, or party that violated the rule or is
responsible for the violation. Absent exceptional circumstances, a law firm must be
held jointly responsible for a violation committed by its partner, associate, or
employee.").

Rule 11 "gives the court authority to issue sanctions against a party whose
attorney of record signs a 'pleading, written motion, or other paper' [that] is not well
grounded in fact, is not warranted by existing law, is not made in good faith, or is
brought for any improper purpose." *Moser v. Bret Harte Union High Sch. Dist.*, 366
F. Supp. 2d 944, 949–50 (E.D. Cal. 2005) (citing *Christian v. Mattel, Inc.,* 286 F.3d
1118, 1131 (9th Cir. 2002)). "Imposition of sanctions is not limited to attorneys, but
may be imposed on parties as well." *Id.*

"Rule 11 addresses the problems of frivolous filings and abuse of judicial
procedures as a tool for harassment." *Id.* (citing *Stewart v. American International
Oil & Gas Co.,* 845 F.2d 196, 201 (9th Cir. 1988)). "Rule 11 creates and imposes on
a party or counsel an affirmative duty to investigate the law and facts before filing
and further obliges an attorney to dissuade a client from pursuing specious claims,
thereby avoiding possible sanctions by the court, as well as unnecessary costs of

litigating a worthless claim." *Id.* at 950 (citations omitted). "Whether to impose sanctions is determined by the reasonableness of inquiry into the law and facts, not the good or bad faith of the signatory….[and 'a] paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make "reasonable inquiry" beforehand.'" *Id.* (quoting *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932 (7th Cir. 1989). "A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 (9th Cir. 1990) (en banc). As relevant here:

> Rule 11 embraces the idea that on occasion attorneys engage in litigation tactics that are unjustifiable within the broad bounds of our adversarial system, and that our system does not tolerate such tactics…. [E]ven those attorneys with the highest credentials can violate Rule 11 by pursuing claims and defenses that do not have merit, and counsel should not put forth frivolous claims before the court.

*MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 626–27 (8th Cir. 2003) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Moreover:

> Sanctions under Rule 11 are not limited to instances in which a pleading as a whole is frivolous, or of a harassing nature. Rather, sanctions may be imposed for improper or unwarranted allegations even though at least one non-frivolous claim has been pled if an attorney has not conducted a "reasonable inquiry" under the circumstances of a case." *Id.* at 1362–65.

*Moser*, 366 F. Supp. 2d at 950 (citing *Townsend*, 929 F.2d at 1362–65).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell*, 496 U.S. at 393.

Here, it is manifest that Twitter and its counsel filed this case with the intent to obstruct and delay Respondents' vindication of their claims and either knew or failed to reasonably investigate the fact that the factual and legal bases for their Petition and Motion to Compel arbitration was entirely devoid of merit. Indeed, Respondents had already initiated arbitrations against Twitter, and it was Twitter that refused to move forward with them.  Twitter's disagreement with JAMS' conclusion that it must pay the arbitration fees is not a ground for moving to compel the employees to arbitrate.  Indeed, Twitter decided to submit to JAMS rules by inserting JAMS as the arbitration provider in its arbitration agreement, and Twitter's arbitration agreement delegates to JAMS decisionmaking regarding the arbitration process – including deciding the allocation of fees.  Moreover, the court in *Ma* already agreed that Twitter must submit to JAMS' determination that it pay the fees. Eric Meckley, lead counsel for Petitioner in this matter and signatory of the Petition at issue, was lead counsel in the *Ma* case and signed briefs there quoting and acknowledging the holding of the *Frazier* case, in which Twitter was represented by Meckley's firm, Morgan, Lewis & Bockius LLP (and there was at least one Morgan Lewis attorney, Michael Kenneally, who represented Twitter in both matters). Likewise, Twitter itself was a party to both the *Ma* and *Frazier* cases, as well as the arbitrations in which JAMS ordered it to pay the applicable fees (in which it is also represented by Meckley and other attorneys from Morgan Lewis). Thus, both

Twitter and its counsel are, and were at the time of the filing of Twitter's Petition
and Motion, fully aware of the frivolousness of these pleadings and the arguments
advanced therein, but they nevertheless proceeding with their filings — and refused
to withdraw them during the pendency of the "Safe Harbor" period.

Accordingly, this Court should sanction Twitter and its counsel pursuant to
Rule 11, including by ordering Twitter to pay Respondents' arbitration fees in toto,
ordering monetary sanctions, ordering payment of all of the reasonable attorneys'
fees and other expenses directly resulting from Twitter and its counsel's violation of
Rule 11, and any other penalties this Court finds appropriate.

### B. The Court Should Grant Respondents' Motion for Sanctions Pursuant to 28 U.S.C. § 1927

Similarly, Twitter's attorneys should be sanctioned pursuant to 28 U.S.C. §
1927. "Section 1927 provides that an attorney who 'so multiplies the proceedings in
any case unreasonably and vexatiously may be required by the court to satisfy
*personally* the excess costs, expenses, and attorneys' fees reasonably incurred
because of such conduct.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
809 F.2d 626, 638 (9th Cir. 1987) (quoting *id.*) (emphasis in original). "This section
is 'concerned only with limiting the abuse of court processes' and is 'indifferent to
the equities of a dispute and to the values advanced by the substantive law.'" *Id.*
(quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762 (1980)). "[A]buses of
court process under § 1927 usually occur at the trial court level by means of delaying
tactics…." *Id.* (collecting cases).

Under Section 1927, courts may require attorneys who unreasonably or vexatiously multiply the proceedings to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *EscapeX IP LLC v. Google LLC*, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024) (citing 28 U.S.C. § 1927). Such sanctions are permissible not only when a court finds the attorneys' conduct to be done in bad faith, but also when the conduct is reckless. *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) ("Recklessness suffices for § 1927 sanctions….").

Courts have found the imposition of § 1927 sanctions appropriate in similar situations as here, including where an attorney "deliberately kept her meritless case alive for no purpose other than to force [the other party] to settle or to defend it." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *accord Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) ("[T]he maintenance of this action in the face of the facts known or available to Kendrick both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927."); *Anhing Corp. v. Thuan Phong Co. Ltd.*, 215 F. Supp. 3d 919, 933 (C.D. Cal. 2015 (noting such sanctions may be warranted "where an attorney acts with the intent to increase expense or to delay").

Here, as described *supra*, Twitter and its attorneys have knowingly (or, at a bare minimum, recklessly) acted to multiple these proceedings, causing needless delays and increasing costs. Even when their legal position became entirely untenable, Twitter and its attorneys doubled down, bringing this action (superficially

to compel arbitration) in a further effort to mire Respondents in protracted battles before their underlying claims (stemming from Twitter's actions in 2022) could at long last be heard.[12] As a result, they should be sanctioned and forced to bear the excess costs, expenses, and attorneys' fees Respondents have reasonably incurred as a result of their conduct.

---

[12]    This obstruction and delay undermines — and makes a mockery of – what the Supreme Court has repeatedly emphasized — that arbitration is a beneficial, quicker and more efficient mechanism of dispute resolution than court proceedings. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) ("Congress adopted the [Federal] Arbitration Act in 1925 in response to a perception that….arbitration had more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved."); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123 (2001) ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ("Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009) ("Parties generally favor arbitration precisely because of the economics of dispute resolution."); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 275, 278 (1995) (rejecting an interpretation of the FAA that would mean "unnecessarily complicating the law and breeding litigation from a statute that seeks to avoid it" and asking, "Why would Congress intend a test that risks the very kind of costs and delay through litigation (about the circumstances of contract formation) that Congress wrote the Act to help the parties avoid?").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.    The Court Should Grant Respondents' Motion for Sanctions Pursuant to the Court's Inherent Powers

Finally, the Court should sanction Twitter and its counsel pursuant to its inherent powers. "The inherent powers of federal courts are those that 'are necessary to the exercise of all others.' The most common utilization of inherent powers is a contempt sanction levied to 'protect the due and orderly administration of justice' and 'maintain the authority and dignity of the court.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (citations omitted) (first quoting *Roadway*, 447 U.S. at 764; then quoting *Cooke v. United States,* 267 U.S. 517, 539 (1925)). "[U]nder its inherent powers, a court may impose sanctions in the form of attorneys' fees when the losing party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 961 (N.D. Cal. 2014) (quoting *id.*). "While a court should ordinarily rely on 28 U.S.C. § 1927 and the Federal Rules of Civil Procedure to impose sanctions, if neither is 'up to the task, the court may safely rely on its inherent power.'" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). When "some of the misconduct could potentially be sanctioned under the Federal Rules of Civil Procedure, [but] that misconduct is 'intertwined within conduct that only the inherent power can address,' [ ] sanctions under the Court's inherent powers are appropriate." *Id.* (quoting *Chambers*, 502 U.S. at 51) (alteration omitted).

Under the Court's inherent power, "sanctions are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or

a non-frivolous argument or objection," including where "the improper purpose was the attempt to gain tactical advantage in another case." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quoting *In re Itel Securities Litigation,* 791 F.2d 672 (9th Cir.1986)) (emphasis in original). "This approach is in harmony with *Roadway,* where the Supreme Court made clear that courts possess inherent power to impose sanctions for 'willful abuse of judicial processes.'" *Id.* (quoting *Roadway*, 447 U.S. at 766).

Here, throughout its entire course of conduct over the past two-plus years, Twitter and its attorneys have persistently worked to obstruct many of its former employees from having their claims even heard. When lawsuits are brought in court, Twitter demands they be compelled to arbitration. When cases are brought in arbitration, Twitter defies orders to pay the fees necessary to proceed. Even after courts have ruled that Twitter must pay these fees, Twitter and its counsel multiply the litigation by launching this meritless lawsuit (and two other identical ones), thus causing further obstruction and delay. Under its inherent powers, this Court should exercise its authority to impose sanctions, sending a clear message that this kind of vexatious legal strategy is unacceptable.

## IV.    CONCLUSION

This Court should impose sanctions upon Twitter and its attorneys in this action; order them to pay Respondents' arbitration fees, monetary sanctions, and all reasonable attorneys' fees and other expenses resulting from their sanctionable conduct; award any other relief it believes appropriate; and make clear in a published

order that there is simply no place in our judicial system for such obstructionism and abuse of the arbitration process.

Respectfully submitted,

Kyle Bahr, et al., Respondents,
By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
Bradley Manewith (*pro hac vice forthcoming*)
Jack Bartholet (*pro hac vice forthcoming*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com;
bmanewith@llrlaw.com;
jbartholet@llrlaw.com

Dated:          May 29, 2025

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Respondents, certifies that this brief

contains 6,195 words, which:

 _X_  complies with the word limit of L.R. 11-6.1


                                        /s/ *Shannon Liss-Riordan*
                                        Shannon Liss-Riordan

Dated:        May 29, 2025