MAX FISCHER (Bar No. 226003)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel.: (213) 612-2500
Fax: (213) 612-2501
max.fischer@morganlewis.com

PAUL D. CLEMENT (*pro hac vice*)
C. HARKER RHODES IV (*pro hac vice*)
MITCHELL K. PALLAKI (*pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com

ERIC MECKLEY (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
eric.meckley@morganlewis.com

*Attorneys for Petitioner X Corp.*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| X CORP.,<br><br>　　　　*Petitioner*,<br><br>　　v.<br><br>KYLE BAHR; KEVYN BELE-BINDA; YOMNA ELSAYED; SHAZIA HAQ; FARAH MYNAF; FRANK RODRIGUEZ; OLEG TROFIMOV,<br><br>　　　　*Respondents*. | Case No. 2:25-cv-02766-RGK-KES<br><br>**PETITIONER X CORP.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Judge: Honorable R. Gary Klausner<br>Courtroom: 850<br>Date:  July 28, 2025<br>Time: 9:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ............................ 1

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT ................................................................................................ 2

    A.   The DRA Requires Respondents To Pay Their Shares of the Arbitration Fees .................................................................................. 2

        1.   The DRA Does Not Authorize JAMS to Resolve Fee Disputes ............................................................................... 4

        2.   The DRA Envisions Pro Rata Apportionment ........................... 7

    B.   California Law Does Not Control ...................................................... 10

III. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    6 P.3d 669 (Cal. 2000) .................................................................................. 10

*Costa v. Melikov*,
    2022 WL 18228248 (C.D. Cal. Oct. 21, 2022) .................................................. 10

*Frazier v. X Corp.*,
    739 F.Supp.3d 219 (S.D.N.Y. 2024),
    *appeal pending*, No. 24-1948 (2d Cir. argued May 15, 2025) ........................ 5, 6

*Indep. Towers of Wash. v. Washington*,
    350 F.3d 925 (9th Cir. 2003) .......................................................................... 10

*Jones v. Starz Ent., LLC*,
    129 F.4th 1176 (9th Cir. 2025) ..................................................................... 4, 5

*Ma v. Twitter, Inc.*,
    2025 WL 436636 (N.D. Cal. Feb. 7, 2025),
    *appeal pending*, Nos. 25-1536 & 25-1695
    (9th Cir. docketed Mar. 10, 2025) ................................................................. 6, 7

*Marino v. CVS Health*,
    698 F.Supp.3d 689 (S.D.N.Y. 2023) .................................................................. 8

*O'Dell v. Aya Healthcare, Inc.*,
    753 F.Supp.3d 1155 (S.D. Cal. 2024) .............................................................. 10

*Ronderos v. USF Reddaway, Inc.*,
    114 F.4th 1080 (9th Cir. 2024) ....................................................................... 10

*Rosa v. X Corp.*,
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) ................................................. *passim*

*Tillman v. Tillman*,
    825 F.3d 1069 (9th Cir. 2016) .......................................................................... 3

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022) ....................................................................................... 10

TABLE OF AUTHORITIES - ii

**Statutes**

9 U.S.C. §4 ..................................................................................................... 1, 3

Cal. Civ. Proc. Code §1281.97 ........................................................................ 10

Cal. Civ. Proc. Code §1281.98 ........................................................................ 10

Cal. Civ. Proc. Code §1281.99 ........................................................................ 10

**Other Authorities**

*Apportion*, Merriam-Webster,
   https://tinyurl.com/4xvfj86c (last visited June 20, 2025) ................................. 9

*Apportion*, Oxford English Dictionary,
   https://tinyurl.com/956rhe66 (last visited June 20, 2025) ............................... 9

JAMS Employment Rule 31 ......................................................................... 3, 8

JAMS Policy on Employment Arbitration Minimum Standards of
   Procedural Fairness ................................................................................ 6, 8, 9

Order Granting Stipulated Dismissal, *Gadala v. Twitter, Inc.*,
   No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023) ......................................... 7

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Respondents claim to be "scratching their heads to figure out" why X Corp. ("X") has moved to compel arbitration when Respondents have made clear they are willing to arbitrate. Dkt.30 ("Opp.") at 1. The answer is simple: Although Respondents claim to be willing to arbitrate, they have refused to abide by the parties' Dispute Resolution Agreement ("DRA"), Dkt.1-1, and pay their share of the arbitration fees. The DRA requires that the fees be "apportioned between the parties" and that "any disputes in that regard will be resolved by" the individual arbitrator hearing the case. DRA §6. As one district court has already concluded in reviewing the DRA, that language requires that the parties "each pay half of the requisite JAMS fee[s]" unless and until the arbitrator hearing the case orders otherwise. *Rosa v. X Corp.*, 2024 WL 4903619, at *13 (D.N.J. Nov. 27, 2024). Respondents' refusal to pay their respective shares is thus a "refusal … to arbitrate under" the terms of the DRA, and entitles X to relief under the Federal Arbitration Act ("FAA"). 9 U.S.C. §4; *see Rosa*, 2024 WL 4903619, at *13.

Respondents' two contrary arguments are meritless. First, they hide behind JAMS's refusal to apportion fees notwithstanding the plain language of the DRA. Opp.9. But nothing in the DRA delegates any authority to resolve fee disputes to JAMS, as opposed to the individual arbitrator. The block-quotes Respondents invoke for their contrary view are lengthy, but either irrelevant or unpersuasive, and are no match for the DRA's unambiguous language. Second, they claim that the DRA does not require the parties to share arbitration fees equally, either because

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 1

(they say) the DRA was a mandatory condition of employment or because (they say) "apportioned" does not mean "apportioned evenly." Opp.16-20. But the DRA makes exceptionally clear that it is *not* a mandatory condition of employment, as underscored by the numerous employees who opted out of it. And Respondents' own sources confirm that "apportioned" generally means an even allocation, and certainly does not mean that one side pays all. This Court should grant the motion to compel arbitration in accordance with the plain terms of the DRA.

## II.  ARGUMENT

### A.  The DRA Requires Respondents To Pay Their Shares of the Arbitration Fees.

Under the plain language of the DRA, Respondents are contractually obligated to pay their respective pro rata shares of the fees for their arbitrations unless and until the individual arbitrator presiding over their case orders otherwise. *See Rosa*, 2024 WL 4903619, at *9-11, 13. Section 6 of the DRA explicitly provides that in all cases where "under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees," those fees "will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." DRA §6. Respondents do not meaningfully dispute that the "applicable law" here is the FAA, and that the FAA does not require X to pay all of the arbitration fees. *See* Dkt.22 ("Mot.") at 8-9.[1] The plain terms of the

---

[1] Respondents gesture to California law, *see* Opp.4-5, but the DRA makes clear that it "is governed by the [FAA]," not California law. DRA §1; *see* Mot.8, 15-16. In any event, California law likewise would not require X to pay all the arbitration fees, *see* Mot.9, 16-17, and Respondents do not meaningfully argue otherwise.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 2

1  DRA therefore require that the arbitration fees must "be apportioned between the
2  parties"—i.e., that the parties will share the burden of those fees equally—unless
3  and until the individual arbitrator hearing the parties' case "resolve[s]" any "disputes
4  in that regard" by ordering a different apportionment. DRA §6; *see* Mot.9-10; *Rosa*,
5  2024 WL 4903619, at *9-11, 13. That plain-text reading of the DRA is confirmed
6  by JAMS Employment Rule 31(a)—incorporated into the DRA along with the rest
7  of the JAMS Employment Rules, *see* DRA §5—which expressly provides that
8  where (as here) an agreement to arbitrate is not a condition of employment, "unless
9  the Parties have agreed to a different allocation, each Party shall pay its pro rata
10 share of JAMS fees and expenses." JAMS Employment Rule 31(a). Respondents'
11 refusal to pay their shares of their arbitration fees accordingly constitutes a "failure
12 … or refusal" to arbitrate under the terms of the DRA, and entitles X to relief under
13 the FAA. 9 U.S.C. §4; *see Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016)
14 ("refus[ing] to arbitrate by choosing not to pay for arbitration" is a "'failure, neglect,
15 or refusal' to arbitrate" (emphasis omitted)); Mot.10-11.

16     Respondents advance two contrary arguments. First, they assert that because
17 the DRA delegates the authority to resolve fee disputes "to JAMS in the first
18 instance," rather than the individual arbitrator hearing the case, this Court must defer
19 to JAMS's X-pays-all policy regardless of the DRA's actual text. Opp.9
20 (capitalization altered); *see* Opp.9-15. Second, they argue that the DRA does not in
21 fact require the parties to share the arbitration fees equally unless and until the
22 arbitrator orders otherwise. Opp.16-20. Neither argument is persuasive.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 3

### 1. The DRA Does Not Authorize JAMS to Resolve Fee Disputes.

As their lead argument, Respondents assert that the DRA "delegate[s] disputes over fees to JAMS in the first instance," and so this Court "cannot second-guess JAMS' decision" to bill the arbitration fees solely to X rather than to both parties. Opp.9 (capitalization altered). That argument runs headlong into the text of the DRA, which nowhere delegates any authority to JAMS as an organization to resolve any disputes over how arbitration fees should be apportioned. Quite the opposite: The DRA unambiguously provides that "any disputes in that regard will be resolved by the Arbitrator," not JAMS. DRA §6.[2] That clear text leaves no room for Respondents' assertions that JAMS can take that issue away from individual arbitrators or that the parties somehow delegated the issue to JAMS itself.

Respondents never confront this basic textual problem. Instead, they resort to lengthy block-quotes from other decisions, *see* Opp.11-15, which are either irrelevant or unpersuasive. None of that can displace the plain text of the DRA.

The only binding decision in Respondents' discussion is *Jones v. Starz Ent., LLC*, 129 F.4th 1176 (9th Cir. 2025), and that decision has no bearing on this case. In *Jones*, 7,300 customers—all represented by the same attorneys—filed arbitration demands with JAMS against a video-streaming service, seeking to initiate 7,300 individual arbitrations, which would have obligated the service to pay over $12 million. *Id.* at 1179. Rather than accede to that demand, JAMS consolidated all the

---

[2] Respondents wisely do not dispute that when the DRA refers to "the Arbitrator," it means the individual arbitrator appointed to hear the case, not JAMS itself. *See* DRA §3 (describing the selection of "the Arbitrator"); *see also* Mot.13.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 4

arbitrations into a single proceeding. *Id.* at 1179-80. One consumer objected—an objection that the Ninth Circuit noted "appear[ed] to be geared more toward racking up procedural costs to the point of forcing [the defendant] to capitulate to a settlement," rather than anything to do with the merits. *Id.* at 1183.

The Ninth Circuit rejected that objection, explaining that the parties' arbitration agreement incorporated JAMS's Comprehensive Rules, which expressly state that "JAMS"—not the individual arbitrator—"may consolidate" arbitrations "if it determines that [the arbitrations] have common issues of fact or law." *Id.* at 1179-80 (quoting JAMS Comprehensive Rule 6(e)); *see id.* at 1184. That is the opposite of the situation here, where the DRA explicitly delegates the authority to resolve fee disputes to the individual arbitrator, not to JAMS itself. DRA §6; *see supra* p.4 & n.2. Thus, *Jones* is fully consistent with the primacy of the parties' agreement and underscores that this Court should enforce the parties' agreement to reserve fee disputes for the individual arbitrator here.[3]

Respondents also invoke *Frazier v. X Corp.*, 739 F.Supp.3d 219 (S.D.N.Y. 2024), *appeal pending*, No. 24-1948 (2d Cir. argued May 15, 2025), but that out-of-circuit district-court decision with a pending appeal is unpersuasive at best. *Frazier* recognized that under the plain terms of the DRA, "ultimate resolution of any dispute over how fees should be allocated must be resolved by an individual

---

[3] *Jones* noted in a footnote that the JAMS Comprehensive Rules authorize JAMS "to make certain procedural decisions prior to the selection of an arbitrator." Opp.15 (quoting *Jones*, 129 F.4th at 1184 n.4). Even setting aside that only the JAMS *Employment* Rules are at issue here, none of those procedural decisions that *Jones* highlighted, however, include ruling on fee disputes—let alone doing so when the parties have expressly reserved that issue for the individual arbitrator.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 5

arbitrator," but nevertheless inexplicably held that "the JAMS Rules and Minimum Standards … contemplate that JAMS as an organization will have the power to make an initial ruling on this dispute." *Id.* at 225-26. As support for that unlikely conclusion, *Frazier* cited JAMS Employment Rule 11—but that rule authorizes JAMS to resolve only "disputes concerning the appointment of the Arbitrator," not fee disputes. *Id.* at 226 (brackets omitted). *Frazier* also cited the JAMS Minimum Standards, but those standards are *not* incorporated in the DRA, *see* Mot.13, and in any event apply only where an arbitration agreement is a mandatory condition of employment, which the DRA was not, *see* Mot.13-14. *Frazier* accordingly erred in concluding that JAMS has "interim" authority to resolve fee disputes that the DRA explicitly reserves for the arbitrator. *Contra* 739 F.Supp.3d at 226.[4]

Finally, Respondents block-quote *Ma v. Twitter, Inc.*, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025), *appeal pending*, Nos. 25-1536 & 25-1695 (9th Cir. docketed Mar. 10, 2025), but that decision is unpersuasive for all the same reasons and then some. *Ma* ultimately denied the motion to compel arbitration on other grounds, *see id.* at *13, making its discussion of the fee-sharing issue dicta, *see* Mot.15—a point that Respondents do not dispute. In any event, *Ma* (like *Frazier*) reached its conclusion that the DRA delegates "initial apportionment" authority to JAMS based

---

[4] *Frazier* also suggested that if JAMS could not make "interim" fee rulings, X might avoid arbitration entirely if it refused to pay amounts that (in its view) it did not owe. 739 F.Supp.3d at 225. But as *Frazier* recognized, Respondents could always "advance the ongoing arbitration fees and later seek reimbursement once the individual arbitrator had been assigned," *id.*—or if Respondents prefer, they could ask JAMS to close the arbitration and then sue in court. That is not an "unreasonable interpretation" of the DRA, *contra id.* at 226; it is what the text requires.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 6

on a handful of JAMS Employment Rules that do not address fee disputes, while disregarding the explicit text of the DRA that reserves any fee dispute for the arbitrator alone. 2025 WL 436636, at *7. *Ma* also wrongly found that JAMS must have interim apportionment authority because (the court believed) the DRA does not "specify a 'default apportionment of fees.'" *Id.* at *6. But as already explained, the plain text of DRA §6 and JAMS Employment Rule 31(a) require a pro rata apportionment unless and until the arbitrator orders otherwise. *See* Mot.9-10; *supra* pp.2-3. *Ma* thus provides no persuasive support for Respondents' position.[5]

In short, nothing in the DRA delegates any authority to JAMS to decide the parties' fee disputes, either on an interim or final basis. Instead, the DRA makes clear the parties will share those fees pro rata unless the individual arbitrator decides otherwise. This Court should follow *Rosa* and the plain terms of the DRA and JAMS Employment Rule 31(a), and hold that JAMS has no power to excuse Respondents from their contractual obligation to pay their share of the arbitration fees.

**2. The DRA Envisions Pro Rata Apportionment.**

Alternatively, Respondents argue that while the DRA provides arbitration fees will be "apportioned between the parties," DRA §6, it does not envision a default rule of pro rata apportionment. Respondents' arguments are again unpersuasive.

1. Respondents first contend that the DRA *was* a mandatory condition of employment, because employees "were required to sign these contracts before

---

[5] Respondents also cite the stipulated dismissal order in *Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023), *see* Opp.13, but that order simply reflects terms negotiated by the parties, not a judicial holding.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 7

beginning their employment," and so JAMS Employment Rule 31(c) and the JAMS Minimum Standards apply and require X to pay all the arbitration fees. Opp.16-17. But the DRA makes overwhelmingly clear that it is *not* a mandatory condition of employment, and that employees can and do "choose to opt out," DRA at 1, and "not be subject to" the DRA, *id.* §8; *see* Mot.4. Respondents have no answer to the many cases demonstrating that opt-out agreements are not mandatory conditions of employment. *See, e.g.*, *Marino v. CVS Health*, 698 F.Supp.3d 689, 695 (S.D.N.Y. 2023) (opt-out provision "negate[d] any suggestion plaintiff was forced to enter into the Arbitration Agreement"); *see also Rosa*, 2024 WL 4903619, at *10; Mot.13-14. And contrary to Respondents' suggestion, nothing prevented them from submitting their opt-out form *before* signing the DRA, making clear that the DRA was never a condition of employment here. *See* DRA §8. *Contra* Opp.17. The DRA's unambiguous opt-out language thus makes clear that the agreement is not mandatory and the parties understood fees would be shared pro rata under JAMS Employment Rule 31(a) unless the arbitrator ordered otherwise. *See* JAMS Employment Rule 31(a) (where agreement to arbitrate is not a condition of employment, "each Party shall pay its pro rata share of JAMS fees and expenses").[6]

Respondents have no persuasive answer to the superfluity that their interpretation creates, as the fee-sharing provision in §6 would be superfluous if the Minimum Standards required X to pay all the fees in all cases. Mot.14; *see Rosa*,

---

[6] Respondents again insist that this Court "cannot second-guess" JAMS's determination that the employer-pays rule of the Minimum Standards applies, Opp.16, but again ignore that the DRA delegates fee disputes to the arbitrator, not JAMS, *see supra* pp.4-7.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 8

2024 WL 4903619, at *11.  Respondents claim that their interpretation ensures that "future changes to state laws and JAMS Rules would be automatically integrated" into the DRA, Opp.17-18, but that does not explain why the parties would include a fee-sharing provision that the Minimum Standards would always supersede.  Respondents claim X's position renders "either the [DRA's] incorporation of the JAMS Rules … or Section 6 of the [DRA] superfluous," Opp.17, but that is wrong; the terms of DRA §6 are specific to fee-sharing, while the JAMS Employment Rules cover multiple topics, such that their incorporation is far from superfluous.  And DRA §6's fee-sharing-specific provisions are unquestionably more specific than the DRA's general incorporation of all the JAMS Employment Rules, underscoring that the specific-governs-the-general presumption favors X, not Respondents.

2. As their final fallback, Respondents argue that the term "apportioned" in the DRA's fee-sharing provision does not presumptively require pro rata apportionment.  Opp.18-20.  But the plain and ordinary default meaning of "apportioned" is a pro rata allocation, as even the dictionaries that Respondents cite recognize.  *See Apportion*, Oxford English Dictionary ("To assign in proper portions or shares; to divide and assign proportionally; to portion out, to share."), https://tinyurl.com/956rhe66 (last visited June 20, 2025); *Apportion*, Merriam-Webster ("to make a proportionate division"), https://tinyurl.com/4xvfj86c (last visited June 20, 2025); *see also* Mot.9-10.  To be sure, an apportionment need not *always* be pro rata—and here, the DRA allows the arbitrator to order a non-pro-rata apportionment "in accordance with … applicable law." DRA §6.  But unless and until the arbitrator does so, the default meaning of "apportioned" governs and

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 9

requires pro rata allocation, as does JAMS Employment Rule 31(a). *See* Mot.10.[7]

**B.     California Law Does Not Control.**

Respondents offer no meaningful response to X's arguments that *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669 (Cal. 2000), and Cal. Civ. Proc. Code §§1281.97-.99 do not apply to the DRA and would be preempted by the FAA in any event. *Compare* Mot.15-20, *with* Opp.4-5. Respondents have thus forfeited those issues. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). In any event, as X has explained, the DRA adopts the FAA as the governing law, DRA §1, and so California law does not apply here (a point Respondents never seriously contest). Mot.15-16, 19. Even if it did, *Armendariz* and Cal. Civ. Proc. Code §§1281.97-.99 are made-for-arbitration rules that violate the FAA's equal-treatment rule and are thus preempted. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022).[8]

**III.   CONCLUSION**

For the foregoing reasons, the Court should grant X's motion.

---

[7] Because the default meaning of "apportioned," read in context, is unambiguous, the doctrine of *contra proferentem* does not apply. *Contra* Opp.19. Respondents also draw no support from cases (mostly from outside the arbitration context) recognizing that apportionment does not *always* "require equal splitting," as those cases say nothing about the default meaning of the term. *Contra* Opp.20 & n.9.

[8] The cases Respondents cite do not change the analysis. In *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024), no party asked the Ninth Circuit to assess the relevant FAA preemption issues. In *O'Dell v. Aya Healthcare, Inc.*, 753 F.Supp.3d 1155 (S.D. Cal. 2024), the parties expressly incorporated Cal. Civ. Proc. Code §1281.98 into their agreement, eliminating any preemption issue. And *Costa v. Melikov*, 2022 WL 18228248 (C.D. Cal. Oct. 21, 2022), is unpersuasive, as it ignored *Viking River*. Mot.20 n.2.

1

        Respectfully submitted,

        s/Paul D. Clement
        PAUL D. CLEMENT (*pro hac vice*)
        C. HARKER RHODES IV (*pro hac vice*)
        MITCHELL K. PALLAKI (*pro hac vice*)
        CLEMENT & MURPHY, PLLC
        706 Duke Street
        Alexandria, VA 22314
        Tel.: (202) 742-8900
        paul.clement@clementmurphy.com
        harker.rhodes@clementmurphy.com
        mitchell.pallaki@clementmurphy.com

        MAX FISCHER (Bar No. 226003)
        MORGAN, LEWIS & BOCKIUS LLP
        300 South Grand Avenue
        Twenty-Second Floor
        Los Angeles, CA  90071-3132
        Tel.: (213) 612-2500
        Fax: (213) 612-2501
        max.fischer@morganlewis.com

        ERIC MECKLEY (Bar No. 168181)
        MORGAN, LEWIS & BOCKIUS LLP
        One Market
        Spear Street Tower
        San Francisco, CA  94105-1596
        Tel.: (415) 442-1000
        Fax: (415) 442-1001
        eric.meckley@morganlewis.com

        *Attorneys for Petitioner X Corp.*

2

June 20, 2025

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 11

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Petitioner X Corp., certifies that this brief is 10 pages, which:

\_\_\_ complies with the word limit of L.R. 11-6.1.

 X  complies with the page limits set by the Court's Standing Order dated April 1, 2025 (ECF No. 10).

Dated: June 20, 2025

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT (*pro hac vice*)
CLEMENT & MURPHY, PLLC

*Counsel for Petitioner*